In re Steve SHEAD, Larry Carter and Fred Crawford.

Misc. No. 10101.

United States District Court
N. D. California.

June 26, 1969.

Garry, Drefus, McTernan & Brotsky, San Francisco, Cal., for defendants.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., for plaintiff.

## MEMORANDUM RE: RELEVANCY AND PROPRIETY OF QUESTIONS PUT TO WITNESSES BY GRAND JURY

OLIVER J. CARTER, District Judge.

The United States of America has filed applications for orders instructing Larry Carter, Steve Shead, and Fred Crawford to testify before the grand jury, pursuant to the provisions of Title 18, United States Code, Section 2514. The cause having been briefed and orally argued before this Court, the Court has entered its order based on its Memorandum for Order filed on June 16, 1969, 302 F.Supp. 560, and for the reasons set forth herein.

■ Before granting the government's application, it is this Court's duty "to ascertain whether the statutory requirements are complied with by the grand jury, the United States Attorney, and the Attorney General." Ullmann v. United States, 350 U.S. 422, 434, 76 S. Ct. 497, 504, 100 L.Ed. 511 (1956). The government's application is made and verified by Cecil F. Poole, United States Attorney for the Northern District of California. The application states that the three witnesses were questioned by the grand jury which was then and there inquiring into matters involving interstate travel to organize, promote and encourage riots and teaching and demonstrating the use and making of firearms and explosives. It also states that the witnesses refused to answer the questions on the grounds that the answers might tend to incriminate them. The application further states that in the judgment of the United States Attorney, the testimony of these witnesses is necessary to the public interest of the United States. United States Attorney General John N. Mitchell has given his approval to the applications on file herein. On this basis, the Court finds that the application by the government is properly made for an order pursuant to 18 U.S.C. § 2514. See In Re Bart, 113 U.S.App.D.C. 54, 304 F.2d 631 (1962).

■ In finding that "in the judgment of a United States attorney [the testimony is] necessary to the public interest," this Court does not have the power to inquire into the accuracy or merits of such judgment. See In Re Bart, *supra.* Congress has left this judgment to executive discretion.

The witnesses contend, however, that they as prospective witnesses before the grand jury are entitled to have the government show the extent to which, if any, the judgment of the United States attorney is affected by any information obtained through an electronic surveillance. More specifically, the witnesses contend that they are entitled to an evidentiary hearing to determine whether or not the witnesses are the victims of an electronic surveillance conducted in violation of the provisions of Title 18, United States Code, Chapter 119.

It is provided in 18 U.S.C. § 2518(10)(a) that:

"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom * * *."

■ In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the question of standing to challenge illegal searches and seizures was before the Supreme Court. The Court noted that the legislative history of Title III, Omnibus Crime Control and Safe Streets Act of 1968, "indicates that 'aggrieved person,' the limiting phrase currently found in Fed.Rule Crim.Proc. 41(e) should be construed in accordance with existent standing rules." Alderman v. United States, *supra*, at 175–176, n. 9, 89 S.Ct. at 968. Clearly, existent standing rules do not give standing to raise search and seizure evidentiary issues to witnesses who are testifying before the grand jury. Such standing is normally arrived at when a person becomes the defendant to criminal or administrative penalty charges.

In this case, the witnesses may never reach the status of defendant in matters relating to their testimony except on charges of perjury or contempt. The "grievance" they suffer is realized at the time they are subjected to an application by the government for an order to testify under a grant of immunity. For this reason, it is urged that the witnesses should have an opportunity to have an evidentiary hearing for the purpose of exploring the extent to which the United States attorney's judgment may be tainted or affected by an illegal electronic surveillance. This Court concludes otherwise.

■■ The purpose of a grand jury investigation is to determine whether probable cause exists upon which an indictment may lie. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1905). The goal of the government's prosecuting agency is to obtain such indictments and ultimately obtain convictions. It is at these stages that evidence is unfolded and subjected to illegal search and seizure attacks.

The fact that the witnesses themselves may never be the subject of related criminal charges does not change the situation. If illegal electronic surveillances involving the witnesses are unveiled in *any* criminal proceeding, violators are subject to criminal penalties and to civil damages. 18 U.S.C. §§ 2511, 2520.

The spirit of the Fourth Amendment's prohibition against unreasonable searches and seizures is not curtailed by denying an evidentiary hearing to these grand jury witnesses. The constitutional exclusionary rule of illegally-obtained evidence is based on the necessity for an effective deterrent to illegal police action. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The risk of not being able to achieve conviction serves this purpose. It is a truism that the deterrent is strengthened by extending the exclusionary rule to grand jury proceedings while they are in progress. However, this would be an unduly burdensome restriction on the administration of justice. Neither the Constitution nor any act of Congress has been interpreted to require the government to prove the absence of illegal electronic surveillances in every case where an order against a witness to testify under a grant of immunity is being requested. Such a witness is not an "aggrieved person" under existent standing rules.

■ It is, therefore, this Court's conclusion that the witnesses' requests that the government be ordered to show the extent to which electronic surveillances have affected the judgment of the United States attorney is hereby denied. This is not to say that the witnesses lack standing to challenge illegal search-

es and seizures when a showing of such illegality is made independently, without unnecessarily lifting the grand jury's cloak of secrecy while it is in progress. This Court would not close its eyes to such a showing if it could be made. See e. g., Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

The witnesses have filed an affidavit of the Attorney General of the United States which was made in connection with a judicial proceeding in the United States District Court for the Northern District of Illinois. This affidavit includes the following statement:

"On various occasions the defendants Davis, Dellinger, Hayden, Rubin and *Seale* participated in conversations which were overheard by government agents who were monitoring wiretaps which were being employed to gather foreign intelligence information or to gather intelligence information concerning domestic organizations which seek to use force and other unlawful means to attack and subvert the existing structure of the government. The records of the Department of Justice reflect that in each instance the installation of the wiretaps involved had been expressly approved by the then Attorney General." [Emphasis added].

■ The government's request in this case is for an order on each of the witnesses to answer approximately fifty questions. Among these questions is one question asking the witness if he attended any meetings of the Black Panther retreat held in California which were presided over by Bobby Seale. The witnesses urge that this relationship between the questions and the electronic surveillances conducted on Bobby Seale is a sufficient showing of possible illegal searches conducted on themselves or in a manner in which they have standing to attack them. This Court finds that such an inference is too remote to require the government to come forth with evidence to the contrary. Furthermore, Cecil F. Poole, United States Attorney for the Northern District of California, has represented in open court that his determination that the requested testimony is necessary to the public interest was in no way arrived at with knowledge obtained through any interception of oral communications by wiretap or the like.

■ The grand jury asked the witnesses questions regarding their involvement with the Black Panther Party and regarding their involvement with learning and teaching the use of firearms and explosives. The Court hereby finds that these questions are relevant to a federal grand jury investigation of possible violations of 18 U.S.C. § 2101. Answers to these questions may very well lead to evidence of intent to promote riots or of overt acts committed for the purpose of promoting riots.

■ Without deciding whether or not any affiliation with the Black Panther Party is evidence of violation of 18 U.S. C. § 2101, this Court concludes that it is well within the power of the grand jury to inquire into such matters to make that determination. Similarly, teaching or learning the use of firearms is undoubtedly a means of promoting riots. The fact that evidence of teaching or learning the use of firearms is alone insufficient to support a conviction under 18 U.S.C. § 2101, or that such evidence may lead to convictions of other crimes is of no moment. This Court need only decide and does decide that such evidence has probative value in determining whether elements of an offense enumerated in 18 U.S.C. § 2101 have or have not been committed.

The questions put to the witnesses are therefore within the scope of the grand jury's inquiry of matters involving violations of pertinent federal law and form a proper basis for this Court's order to answer them under a grant of immunity.