**In the Matter of Grand Jury Witness, Anthony RUSSO, Jr.**

**Anthony RUSSO, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 71–2046.**

United States Court of Appeals, Ninth Circuit.

Aug. 17, 1971.

Joseph A. Ball (argued), of Ball, Hunt, Hart, Brown & Baerwitz, Long Beach, Cal., for appellant.

Robert L. Keuch (argued), Garvin Lee Oliver, Dept. of Justice, Robert C. Mardian, Asst. Atty. Gen., Washington, D. C., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for appellee.

Before KOELSCH and CARTER, Circuit Judges, and BEEKS,* District Judge.

JAMES M. CARTER, Circuit Judge.

This is an appeal from an order of the district court holding Russo, a witness before the grand jury, in civil contempt for failure to answer questions, 28 U.S. C. § 1826, after being granted immunity under 18 U.S.C. § 2514.

Russo raises procedural questions allegedly invalidating the judgment, and also contends that subsequent to the refusal to answer, the grand jury has indicted one Ellsberg, who was the subject of most of the questions, and that the proceeding is now moot. We affirm.

We note preliminarily that notice of appeal was filed on July 2, 1971. 28 U. S.C. § 1826(b) requires the appeal to be determined within 30 days, i. e. by August 1, a Sunday. Appellant's brief was filed July 27, 1971 and appellee's brief was handed to members of the panel on August 2, 1971, the day argument was scheduled and heard. On August 2, we entered our order affirming the judgment with a statement that an opinion would be filed. Appellant has raised no question as to the 30 day period.

I.

*The Claimed Procedural Defects*

Appellant claims he received inadequate notice of both the immunity appli-

---

* Honorable William T. Beeks, United States District Judge, District of Washington, sitting by designation.

cation, and the contempt proceedings. Appellant had been subpoenaed to appear and appeared before the Grand Jury on June 23, 1971. He then refused to testify, claiming his privilege against self incrimination. The same day the United States Attorney filed an application to grant appellant immunity pursuant to 18 U.S.C. § 2514 and the district court so ordered.

Appellant was present with his counsel at the time the order was made. Counsel stated he had no objection to the grant of immunity; but that if appellant, the witness, claimed his privilege and refused to testify, counsel stated he wished an opportunity to be heard, and asked for at least 24 hours continuance before he made his argument. Accordingly, and with the apparent approval of counsel, appellant was ordered to appear before the grand jury at 2 P.M. of that day, June 23, 1971 and the time for hearing counsel's contentions and argument was set for June 25, 1971 at 2 P.M.

The arguments were heard on June 25, 1971 and appellant's contentions overruled. The United States Attorney reported that appellant had refused to answer questions and with the approval of appellant's counsel a contempt hearing was set for one week later, July 2, 1971 at 2 P.M.

At the hearing on July 2, 1971 appellant contended he was entitled to a jury trial and that since the grand jury had returned an indictment against Ellsberg, subsequent to appellant's appearance before the grand jury on June 23, 1971, the grand jury had no further right to question appellant.

The trial court ordered appellant to answer the specific questions he had been asked and, when he refused, sentenced him in civil contempt and committed him to the custody of the Attorney General until such time as he purged himself of contempt, by answering the questions or until the current term and any extended terms of the grand jury shall have expired, whichever shall first occur.

## A. *Notice*

### (1) *The Grant of Immunity*

■ Appellant contends that under the Fed.Rules of Civil Procedure he was entitled to five days notice of the application for the grant of immunity. Although Rule 6(d), Fed.Rules of Civil Procedure, provides for five days notice, the Rule also provides that a different period may be fixed by the court. United States v. Weinberg (9 Cir. 1971) 439 F.2d 743. This court has upheld the holding of an immunity hearing immediately after a witness has refused to answer a question. Licata v. United States (9 Cir. 1970) 429 F.2d 1177, judgment vacated as moot, 400 U.S. 938, 91 S.Ct. 239, 27 L.Ed.2d 243; United States v. Weinberg, supra. See In Re Lazarus (D.C.Cal.1967) 276 F.Supp. 434.

*Licata* held that "Section 2514 suggests, and we conclude, that issuance of such an order is a ministerial act requiring neither notice nor a hearing." 429 F.2d at 1179.

In any event, the trial court granted appellant's counsel two day's time to attack the immunity order and continued the matter to June 25, 1971. Appellant's counsel agreed to the procedure and considered the time allowed as sufficient.

### (2) *The Contempt Proceedings*

■ Appellant complains of lack of written notice of the contempt hearing. On June 25, 1971 appellant and his counsel were advised by the court that appellant had refused to answer questions on June 23, 1971, despite the grant of immunity. Oral application was made by the government for an order to show cause why appellant should not be held in contempt. The court fixed a date for such a hearing for July 2, 1971 after considerable discussion and an attempt to fix a time which would not interfere with a proposed trip by appellant's counsel to the annual meeting of the American Bar Association. There is no merit to the contention.

B. *Sufficiency of the Application for Immunity.*

Appellant contends the application was deficient because it did not allege the precise offense which the grand jury was investigating.

*Licata,* supra, disposes of the contention and requires no more than a representation by the United States Attorney that "the proceedings before the grand jury involve the violation of an offense enumerated in 2516." [Id. p. 1180] Although it is suggested that the vacation of the judgment in *Licata* as moot (400 U.S. 938, 91 S.Ct. 239, 27 L.Ed.2d 243) affects the authority of the case, we here reaffirm the principles and holdings of *Licata.*

*Licata,* supra, further held,

"The U.S. Attorney's assertion that the testimony of a witness is 'necessary to the public interest' must be accepted by the court to which the application is presented; Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); his representations concerning the offenses being investigated by the grand jury must likewise be accepted. Furthermore, no opportunity to exercise judicial discretion arises with respect to the Attorney General's approval of the application; he either assents or he doesn't assent. Thus the application tenders no issue, either factual or legal, for judicial decision."

■ In Re Bart (1962) 113 U.S.App. D.C. 54, 304 F.2d 631 states that an application for immunity is "by its nature preliminary and summary" [Id. p. 636] and "the full panoply of trial is not appropriate." [Id. p. 637]. Nevertheless, appellant relies on In Re Bart to support his contention. The case is not controlling and was analysed and distinguished in *Licata.* The proceeding in *Bart* involved a different immunity statute, to-wit, 18 U.S.C. § 3486, which the D.C. Court read as requiring that the court play a judicial role in determining whether the offense under investigation involved "interference with or endangering the national security." As held in *Licata* and In Re Shead, 302 F.Supp. 569, 570 (N.D.Cal.1969) affirmed sub nom. Carter v. United States, 417 F.2d 384 (9 Cir. 1969), cert. denied 399 U.S. 935, 90 S.Ct. 2253, 26 L.Ed.2d 807 (1970), courts do not have the power or function under 18 U.S.C. § 2514 to inquire into the merits of the United States Attorney's determination, with approval of the Attorney General, that testimony is "necessary to the public interest."

We have read In Re Vericker, 446 F. 2d 244 (2 Cir. 1971). It does not change our views. There the court states that "In any event the decisions are virtually unanimous in holding or *assuming* that the witness may challenge whether the subject matter of a grand jury investigation is consonant with the statutory authorization for the grant of immunity and that upon such a challenge, the Government must make at least a modest showing that it is." [Emphasis supplied] In support thereof the court cites Carter v. United States, supra. *Carter* stated that each application for immunity alleged that the grand jury was inquiring into matters involving interstate travel to organize, promote and encourage riots and teaching and demonstrating the use and making of firearms and explosives. No contention concerning the sufficiency of the application was made in *Carter* and the decision does not turn in any way upon such a matter.

Nor does Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956) cited in *Vericker,* support the court's statement. *Ullman* stated: "A fair reading of § (c) [18 U.S.C. § 3486(c), the section under which immunity was granted] does not indicate that the district judge has any discretion to deny the order on the ground that public interest does not warrant it. * * * [p. 432, 76 S.Ct. p. 503] * * *. [T]he Court's duty under § (c) is only to ascertain whether the statutory requirements are complied with by the grand jury, the United States Attorney,

and the Attorney General. * * *" [p. 434, 76 S.Ct. p. 504] We find no reference in *Ullman* at p. 431, 76 S.Ct. 497, cited in *Vericker*, to support the court's reference.

In United States v. Harris (2 Cir. 1964) 334 F.2d 460, reversed on other grounds, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), relied on in *Vericker*, the appellant who had been granted immunity under Sec. 409(1), Title 47 U.S.C., contended he should have been granted the right to summon witnesses to establish that the grand jury's investigation did not pertain to alleged violations of the Communications Act. The Second Circuit stated:

"We do not agree. The extent in general to which a witness may inquire into the subject matter of a grand jury investigation is severely circumscribed, in light of the secrecy in which grand jury proceedings have traditionally been held. United States v. Levine, 267 F.2d 335, 336–337 (2 Cir. 1959). See Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919). In any event, we find that the government sufficiently established that the grand jury's investigation fell within the confines of § 409(1).

First, the August 7 subpoena explicitly stated that the grand jury was engaged in investigation of possible violations of the Communications Act. Second, the government's counsel represented to the court that the grand jury was investigating possible violations of the Communications Act. Finally, the questions themselves revealed a substantial link with those sections of the Communications Act which prohibit any person from causing a telephone company to violate any provision of the Act." 334 F.2d 460, 462–463.

Finally, United States v. Di Mauro (8 Cir. 1971) 441 F.2d 428 is cited and relied upon in *Vericker*. In *Di Mauro* the court stated:

"The defendants' next contention is that the orders to testify are invalid because the Government's application for the grants of immunity contained no showing that the grand jury investigation concerned any of the crimes specified in 18 U.S.C. § 2514.

The immunity authorized under § 2514 is not self-executing, as for example is that authorized under 47 U.S.C. § 409(1). It is conferred only upon an order of the court, based upon a proper application by the Government. The court may grant the immunity only upon a finding that the statutory requirements have been complied with, and this includes a finding that the grand jury inquiry is into crimes specified in the statute. Ullman v. United States, 350 U.S. 422, 434, 76 S.Ct. 497, 100 L.Ed. 511 (1956).

* * * * * *

The defendants were afforded a hearing on this issue, and we think the court had before it more than sufficient information on which to base its finding that the inquiry included crimes specified in § 2516(1) (c), as to which immunity was authorized by § 2514. This information consisted of the telegram from the Assistant Attorney General which was read into the record in the presence of the witness stating that the grand jury investigation concerned violation of 18 U.S.C. §§ 1084, 1952, and 371, all of which are crimes specified in § 2516(1) (c), and that immunity was authorized under and requested pursuant to § 2514. In addition the questions which had been asked of the witness in the grand jury proceeding were supplied to the court.[4] These questions clearly revealed that the grand jury was inquiring into crimes proscribed by 18 U.S.C. § 1084 (transmission of wagering information) and § 1952 (interstate and foreign travel or transportation in aid of racketeering enterprises)." [pp. 437–438].

Thus the authorities cited and relied upon in *Vericker*, supra, demonstrate at

most, the minimum showing that the government must make.

■ In the case at bar the application stated that "a duly constituted grand jury is presently inquiring into alleged violations of Ch. 37 of Title 18 of the U.S. Code." In addition the U.S. Attorney advised the court at the time of the application for immunity that one of the crimes being investigated under Ch. 37 was 18 U.S.C. § 793. Subsequently, an indictment was returned against one, Ellsberg, based on that section. 18 U.S.C. § 2516(1) (a) specifically refers to "Ch. 37 [relating to espionage]." Ch. 37 of Title 18 U.S.C. contains sections 792 to 799 under the general title "Espionage and Censorship." Sec. 793 bears the title "Gathering, transmitting or losing defense information." It is clear that if a description of what the grand jury was investigating is required, that information was specifically contained in the application, and the oral statement of the U.S. Attorney in the presence of defendant and his counsel, that one of the crimes being investigated under Ch. 37 was 18 U.S.C. § 793.

### The Contempt Proceedings are Not Moot

■ Appellant contends that the return of the indictment against Ellsberg moots the contempt proceedings. The grand jury is still in session. We cannot assume that no further information appropriate to their inquiry will be obtained from appellant upon the answering of the questions proposed. There may well be involved additional defendants, or additional criminal acts shown to have been committed by Ellsberg. The effective functioning of a grand jury would be seriously affected if it was required to delay its return of an indictment to await an attempt to obtain evidence from a recalcitrant witness. The contention is without merit.

### III.

### Standing of the Grand Jury Witness

■ Appellant contended he was entitled to an evidentiary hearing on the question of whether or not the questions propounded to him were the product of illegal surveillance or wire tapping. On inquiry by the district court, the government responded that no wire tapping was involved. Even those circuits which hold that grand jury witnesses have standing to raise the question, have held that such a negative representation by the government is sufficient. In Re Carol Evans and Fishlowitz, 40–71 (D.C. Cir. July 23, 1971); In Re Jacques Egan, 450 F.2d 199 (3 Cir. May 28, 1971).

This circuit has consistently rejected the contention that a witness has such standing. In Re Shead, 302 F.Supp. 569 (N.D.Cal.1969), affirmed sub nom. Carter v. United States, 417 F.2d 384 (9 Cir. 1969), cert. denied 399 U.S. 935, 90 S.Ct. 2253, 26 L.Ed.2d 807 (1970); United States v. Gelbard and United States v. Parnas, 443 F.2d 837 (9 Cir. June 8, 1971) rehearing denied, June 24, 1971; and In Re Leslie Bacon, 446 F.2d 667 (9 Cir. June 25, 1971).

The judgment is affirmed.