UNITED STATES of America,
Plaintiff-Appellee,

v.

In re Linda Marie REYNOLDS, Witness
before Special Grand Jury, Defendant-
Appellant.

No. 71-2496.

United States Court of Appeals,
Ninth Circuit.

Oct. 21, 1971.

George S. Withy (argued), Berkeley, Cal., Norton Tooby, Menlo Park, Cal., Frank Pestana, Los Angeles, Cal., for appellant.

David P. Bancroft, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS, HAMLEY and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Reynolds appeals from an order finding her in contempt for refusing to answer questions propounded to her as a witness subpoenaed before a grand jury. We are required by 28 U.S.C. § 1826(b) to decide this appeal within 30 days from September 20, 1971. We affirm.

1. *The facts.*

Pursuant to a subpoena, the validity of which is not contested, Reynolds appeared before a Federal Grand Jury at San Francisco on August 5, 1971. She gave her name and address, but refused to answer other questions. Instead she demanded to know whether any of the information leading to her being subpoenaed, or which was used as a basis for the questions propounded to her, had been obtained by illegal wire tapping, electronic surveillance, or other illegal means. She was ordered to return on September 9. On September 3, the government filed and served by mail a motion to disclose the August 5 proceedings (Rule 6(e) F.R.Crim.P.) and for an order compelling her to answer. The moving papers stated that, if she were to again refuse to answer, the government would move to have her held in contempt, and that, if she claimed a privilege not to testify under the Fifth Amendment, the government would ask the court to grant her transactional immunity.

Reynolds appeared on September 9, but refused to answer, claiming that she had a right "to determine * * * the nature of the information which led to her being subpoenaed here, and that if the information was obtained by illegal means then she has a right to refuse to proceed * * * before the Grand Jury, and * * * to refuse to answer their questions."

The government claimed that Reynolds lacked standing to raise this question. It also presented an affidavit by a Special Investigator of the Treasury Department stating: "At no time in the course of this investigation was any electronic interception of a wire or oral communication undertaken or effected." In addition, the Assistant United States Attorney represented to the court that no wire tapping had been used in accumulating the evidence that he was seeking to present to the Grand Jury.

Reynolds' counsel asked for an evidentiary hearing, but offered no evidence that any illegal surveillance had occurred, much less that any such surveillance of Reynolds had taken place. The court denied such a hearing and ordered Reynolds to return to the Grand Jury and answer the questions. She again refused, adding, as an additional reason, possible self-incrimination.

The government then presented to the court, on the same day, a motion for a grant of immunity under 18 U.S.C. § 2514. This motion was granted, and the court ordered that Reynolds have full

transactional immunity under that section. Again, Reynolds refused to answer. She was once again, on the afternoon of September 9, brought before the court on a motion that she be found in contempt. At the hearing, her counsel's sole objection, other than a claim that the grant of immunity was insufficient (a ground not urged here), was "that [Reynolds] has a right * * * to have a hearing to determine the question of whether or not the government relied on illegally obtained evidence in subpoenaing her before the Grand Jury." In response to a question by the court, the United States Attorney, who was also present, gave the court the same assurance that no wire tapping had been used as had been previously given by his Assistant. The court found "that there is no evidence of and * * * that there was no unauthorized wire tapping or electronic surveillance, or other illegal means to obtain the evidence on which these questions put to this witness were based." It then entered the order appealed from.

On September 14, Reynolds' counsel presented a motion to reconsider, claiming for the first time that inadequate notice of the government's motions had been given, and that she had had no notice of the proposed filing of the Special Investigator's affidavit, thus having no opportunity to respond. A hearing was had. In support of the motion, counsel presented the affidavit of one Susan Garrett, in which she claimed that her telephone had been tapped. As the court found, "nothing had been submitted * * * which would indicate * * * that there has been any wire tapping insofar as * * * Reynolds was concerned * * * even if there might have been wire tapping in connection with somebody else." The court asked government counsel to look into the matter and continued the hearing. At a further hearing on September 17,

the government presented affidavits of telephone company employees to the effect that, on the occasion mentioned in Garrett's affidavit, there had been no tapping of her phone. Counsel for Reynolds asked for an oral hearing, with an opportunity to examine the government's affiants. This was denied, and reconsideration of the September 9 order was denied. This appeal followed.

*2. Standing.*

█ In a series of recent decisions involving facts quite comparable to those here, we have held that a witness before a grand jury has no standing to raise the questions that Reynolds seeks to raise. Carter v. United States, 9 Cir., 1969, 417 F.2d 384, 388, cert. denied, 1970, 399 U.S. 935, 90 S.Ct. 2253, 26 L. Ed.2d 807; United States v. Gelbard, 9 Cir. 1971, 443 F.2d 837, 838; Bacon v. United States, 9 Cir., 1971, 446 F.2d 667, 668; Olsen v. United States, 9 Cir., 1971, 446 F.2d 912; Reed v. United States, 9 Cir., 1971, 448 F.2d 1276; Russo v. United States, 9 Cir., 1971, 448 F. 2d 369. In *Gelbard, Olsen, Reed,* and *Russo,* we expressly rejected the contention that 18 U.S.C. §§ 2515 and 2518(10) confer such standing, and in *Olsen* and *Russo* we refused to adopt the contrary view expressed in In re Egan, 3 Cir., 1971 *(in banc,),* 450 F.2d 199, and in the opinions of Judges Bazelon and Wright in In re Evans, D.C.Cir., 1971, (Nos. 71–1499 and 71–1521, July 23, 1971).

Moreover, in *Russo* we held that a government statement that no wire tapping was involved is sufficient to defeat the witness' claim, pointing out that *Evans* and *Egan* are in accord.

Our decisions, we think, are dispositive of this case. Reynolds argues, however, that they are not, because in none of them was 18 U.S.C. § 3504 relied upon as a basis for standing, as she relies upon it. We quote the statute in the margin.[1] It is true that § 3504 was not

---

1. "§ 3504. *Litigation concerning sources of evidence.*

   (a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

   (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an un-

cited in any of our decisions, and we therefore proceed to consider its effect.

Reynolds relies on the language in subsection (a), "In any \* \* \* hearing or other proceeding in or before any \* \* \* grand jury \* \* \*" and in subdivision (1) "upon a claim by a party aggrieved." She argues that, in a grand jury proceeding, the only person who can be a "party aggrieved" is a witness, because there is no other "party" to such a proceeding, and that therefore the section must have been intended to grant her standing. She points to cases holding that a witness before a grand jury can assert a personal privilege against testifying. United States v. Weinberg, 9 Cir., 1971, 439 F.2d 743, 750–751; Blau v. United States, 1950, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (privilege against self-incrimination); Ullmann v. United States, 1956, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511; Marcus v. United States, 3 Cir., 1962, 310 F.2d 143 (scope and sufficiency of grant of immunity); In re Caldwell, 9 Cir., 1970, 434 F.2d 1081, cert. granted, 1971, 402 U.S. 942, 91 S.Ct. 1616, 29 L.Ed.2d 109 (newspaper reporter's privilege); In re Bonanno, 2 Cir., 1965, 344 F.2d 830 (attorney-client privilege). These cases, Reynolds argues, show that a witness before a grand jury can be "a party aggrieved" within the meaning of section 3504. We think not. There is a great difference between the right of a witness, wherever appearing, to assert a personal privilege against testifying,

and the right of a witness, wherever appearing, to seek to suppress, or refuse to testify about, evidence unlawfully obtained. A witness is not a party in the sense in which that term is generally used. When his personal privilege not to testify is invaded, he can be said to be a person aggrieved, but not a party aggrieved.

Section 3504 uses the word "party", not "person," and does so, we believe, intentionally. It was enacted primarily to deal with the problem of the use of wire tap evidence obtained before the enactment of 18 U.S.C. Part 1, ch. 119, §§ 2510–2520 on June 19, 1968, as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, 82 Stat. 197, 211. That chapter authorizes wire tapping in certain cases, prohibits it in all others, and provides criminal penalties (§ 2511) and civil penalties (§ 2520) for violations of its provisions. It also prohibits the use in evidence of the fruits of unlawful wire tapping (§ 2515) and establishes a procedure for the suppression of such evidence (§ 2518(10)).

Section 3504 was enacted two years later, and we think that its purpose was not to afford new remedies, but to dispose of the problem of wire tapped evidence obtained before the enactment of chapter 119. See § 3504(a) and (b). Moreover, § 3504, unlike chapter 119, does not either impose penalties or provide remedies. For those, we must go to chapter 119. The language of § 3504(a)

lawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act;

(2) disclosure of information for a determination if evidence is inadmissible because it is the primary product of an unlawful act occurring prior to June 19, 1968, or because it was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, shall not be required unless such information may be relevant to a pending claim of such inadmissibility; and

(3) no claim shall be considered that evidence of an event is inadmissible

on the ground that such evidence was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, if such event occurred more than five years after such allegedly unlawful act.

(b) As used in this section 'unlawful act' means any act the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto.

Added Pub.L. 91–452, Title VII, § 702 (a), Oct. 15, 1970, 84 Stat. 935."

and (1) is similar to that of § 2515 insofar as it includes in its list of proceedings those before a grand jury. But § 2518(10), which provides a remedy, does not include grand jury proceedings. As pointed out above, we have held that neither § 2518(10) nor § 2515, separately or together, confers standing on a witness before a grand jury to raise the question Reynolds seeks to raise. We do not think that § 3504 does what those sections do not do.

The legislative histories of § 2518(10) and of § 3504 confirm this view.

"Because no person is a party to a grand jury proceeding [§ 2518(10) (a)] does not envision the making of a motion to suppress in the context of such a proceeding itself. * * * It is the intent of the provision only that when a motion to suppress is granted in another context, its scope may include use in a future grand jury."

S.Rep. 1097, 90th Cong., 2d Sess., 96, 106 (1970).

That of section 3504 is similar.

"Under the provision, upon a charge by the *defendant* with standing to challenge the alleged unlawful conduct, the Government would be required to affirm or deny (it)."

House Rept. No. 91–1549, recited in 1970 U.S.Code Cong. and Admin.News, pp. 4007, 4027 (1970) (emphasis supplied).

Section 3504 was enacted to cut down the number of cases in which the question of illegal wire tapping might have to be litigated, not to increase that number (*id.* at pp. 4058, 4062).

There is another reason why § 3504, if it confers standing on any grand jury witness, does not confer standing on Reynolds. The phrase "party aggrieved" has an established meaning in cases arising under the Fourth Amendment. It means a party against whom the unlawful search was directed, one "whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Alderman v. Unit-

ed States, 1969, 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176. See also United States v. Haili, 9 Cir., 1971, 443 F.2d 1295, 1298, and cases there cited. There is nothing in this record which even hints that any conversation of Reynolds was the subject of illegal electronic surveillance.

Nor does the Fourth Amendment confer standing on Reynolds. Every case that she cites, save one, involves one who was a defendant in a criminal case, rather than one who is solely a witness before a grand jury. See Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Alderman v. United States, *supra*; Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. In re Dionisio, 7 Cir., 1971. 442 F.2d 276, involved a direct invasion of the rights of the witnesses themselves, and is not in point here. We express no opinion as to whether we would follow it.

3. *Sufficiency of the evidence to require a hearing assuming standing.*

■■ We agree with the trial court that, assuming standing, the evidence here is not sufficient to require a hearing. The affidavits do not really conflict, and there is no evidence that any unlawful wire tapping occurred. Furthermore, if § 3504 confers standing, the only right it confers is to claim that evidence is inadmissible "because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act," and to require the government to "affirm or deny the occurrence of the alleged unlawful act". The government has denied it. That is the most that § 3504 can be read to require, and, as we have pointed out above, it is enough.

4. *Notice.*

■ Reynolds claims that insufficient notice of the government's motions was given. The notice was mailed on September 3; the hearing was September 9. This is two days short of the time pre-

**1352**

scribed by Rule 45(d) and (c), F.R. Crim.P. But at the September 9 hearing no objection was made on that ground. Such an objection was made on September 14, and a further hearing was had on September 14 and 17. There was no further objection on that ground. We find no prejudicial error. See Bacon v. United States, *supra;* Russo v. United States, *supra;* United States v. Weinberg, *supra,* 439 F.2d at 746–747.

The order appealed from is affirmed. The government's motion to reconsider our order granting appellant's motion for release pending appeal is granted, and that order, filed on September 28, 1971, is revoked, effective when the mandate issues. The mandate shall issue forthwith.