In re Kenneth **TIERNEY**.
In re Paschal **MORAHAN**.
In re Daniel **CRAWFORD**.
In re Mathias **REILLY**.
In re Thomas **LAFFEY**.

Nos. 72–2333, 72–3999.

**Summary Calendar.**\*

United States Court of Appeals, Fifth Circuit.

On Suggestion for Hearing En Banc Aug. 1, 1972.

Opinion Aug. 3, 1972.

See also, U.S., 93 S.Ct. 17.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Edward J. Polk, Dallas, Tex., William C. Cunningham, c/o Center for Constitutional Rights, Doris Peterson, James

Reif, Frank Durkan, New York City, Benjamin E. Smith, New Orleans, La., for appellants.

Frank D. McCown, Eldon B. Mahon, U. S. Attys., Fort Worth, Tex., Robert L. Keuch, William Piatt, Internal Sec. Div., Dept. of Justice, Washington, D. C., for appellee.

## ON SUGGESTION FOR HEARING EN BANC

Before BELL, DYER and CLARK, Circuit Judges.

### BY THE COURT:

No Judge in regular active service on the Court having requested that the Court be polled on hearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Hearing En Banc is denied.

## OPINION

BELL, Circuit Judge:

These cases are consolidated for appeal. Appellants are incarcerated under adjudications of civil contempt for failing to testify before a federal grand jury after having been accorded use immunity under 18 U.S.C.A. §§ 6002, 6003.[1] The incarceration is pursuant to

---

1. § 6002. Immunity generally

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

 (1) a court or grand jury of the United States,

 (2) an agency of the United States, or

 (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other in-

formation) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

§ 6003. Court and grand jury proceedings

 (a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-

28 U.S.C.A. § 1826.[2] The appeals are subject to the statutory thirty day requirement of 28 U.S.C.A. § 1826(b). The record and briefs were filed on short notice in order to comply with the statute. For reasons stated in our order of July 25, 1972, we extended the expiration date of the thirty day period in No. 72–2333 from July 26, 1972 to August 4, 1972, which is the statutory expiration date in No. 72–2399. [Order attached as Appendix "A"].

There are six assignments of error. They are common to each appellant. The two principal assignments center on (1) the alleged refusal of the district court to permit appellants to consult with counsel while being questioned before the Grand Jury, and (2) the contention that use immunity was insufficient protection under the Fifth Amendment privilege against self-incrimination because of the possibility of prosecution in Great Britain. Two additional assignments are (1) that because the government failed to negate sufficiently a claim of electronic surveillance, appellants were justified in refusing to testify; and (2) that the Department of Justice failed to follow its guidelines in applying to the district court for orders

to compel appellants to testify. The other assignments of error go to the conduct of the proceedings in the district court: (1) that appellants were not afforded adequate notice and a meaningful opportunity to prepare for the hearings on the applications of the government for the compulsory testimony orders and for the subsequent contempt proceedings; and (2) the trial judge demonstrated such partiality as to require his disqualification under due process standards and the federal supervisory power. We affirm.

I.

The facts of record disclose that appellants appeared before the grand jury in Fort Worth, Texas, in response to subpoenas. They are residents of New York and were accompanied by counsel upon their arrival in Fort Worth. Tierney was the first of the five appellants to be called before the grand jury. The pattern of his conduct before the grand jury and the general proceedings thereafter with respect to each appellant are similar to the extent that we may consider all as being in the same factual posture for the purpose of considering the issues presented by the appeals.

incrimination, such order to become effective as provided in section 6002 of this part.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

2. § 1826. Recalcitrant witnesses

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court,

upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

Several questions were propounded to Tierney. The only one answered was as to the correctness of his name. Each question concerned a matter relevant to the investigation.[3] They had to do with whether the witness (and this applies to each of appellants) had purchased firearms on certain dates and at certain places, whether they had used the driver's license of any other individual for the purpose of identification in purchasing firearms, whether their own driver's license had been loaned to others for that purpose, and whether they had any knowledge of any person or persons in this country who were engaged in the illegal purchase of weapons and explosives. Tierney sought permission to consult with attorneys before answering the questions and permission was granted or taken, depending on how one reads the transcript of the event. In either case, after conferring with his attorneys, he refused to answer each question, claiming protection under the First, Fourth, Fifth, Sixth, and Ninth Amendments to the Constitution and the United States Code.

At this stage, as to each appellant in turn, there was a proffer of immunity as required under § 6003, supra. After hearing, immunity was granted to each of the appellants by the district court in written orders.

Each appellant was then instructed to answer the questions propounded by the grand jury. Each, in turn, refused. The government moved to have them adjudicated in civil contempt and, after hearings, such a result ensued. Bail was denied by the district court and by this court. These appeals followed.

## II.

■ The first assignment of error rests on the contention that appellants were denied their Sixth Amendment right to effective assistance of counsel and their Fifth Amendment right to due process of law through the denial to them of their right to consult with counsel before answering questions propounded to them before the grand jury. The difficulty with the position of appellants is that the record does not make out a denial of counsel.

Appellants were in fact permitted to consult with counsel during their appearances before the grand jury with respect to the questions propounded. This opportunity was granted by the foreman of the grand jury on request from each of the appellants, and we do not perceive that the district court has ruled to the contrary. Such remarks as the district court made with regard to consultation with counsel were in the beginning of the proceedings and were directed to preventing an abuse of the privilege of consultation. The court was specific in stating that appellants were not to leave the grand jury room without permission from the foreman. It was implicit, of course, and in practice it developed, that appellant could leave for consultation upon being granted permission by the foreman. The record is clear that permission was freely granted by the foreman although not after each question. There was some reluctance to let Tierney leave the grand jury room to consult counsel but none whatever as to the other four appellants. Each was granted permission by the foreman to so consult, and usually after two and at no time after more than three questions had been propounded.

■ It goes without saying that the district court had the power to prevent a breakdown in the grand jury proceedings by frequent departures from the grand jury room for frivolous reasons and with intent to frustrate the proceedings. On the other hand, the privilege

---

3. The grand jury was investigating possible violations of Title I of the Gun Control Act of 1968 (18 U.S.C. § 921 et seq.); Title II of the Gun Control Act of 1968 (26 U.S.C. § 5861); Title XI of the Organized Crime Control Act of 1970 (18 U.S.C. § 842 et seq.); Foreign Agents Registration Act (22 U.S.C. § 611 et seq.), and conspiracy (18 U.S.C. § 371).

of consulting with counsel can be accommodated to the grand jury proceedings as was done through cooperation between the witness and the foreman of the grand jury.[4]

In sum, we need not reach the question of a right, and if a right, the extent thereof, of a witness before a grand jury who has been granted immunity to consult with counsel outside the presence of the grand jury. It is sufficient to say that here appellants were not denied the right to consult with counsel. They were accorded such a right and, after consultation, refused in every instance to answer.

### III.

 The next assignment of error concerns the extent of the reach of use immunity as provided under § 6002, supra. The position of appellants is that they are entitled to protection under the Fifth Amendment from possible incrimination as to crimes under the laws of Great Britain through answers given to the questions propounded to them before the grand jury. Their position is that use immunity is insufficient to afford them protection from such foreign prosecution. Whether the reach of the Fifth Amendment is such as to protect against foreign prosecution is an open question and we need not reach it in this case. The question was presented to the Supreme Court in Zicarelli v. New Jersey State Commission of Investigation, 1972, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234, but was not answered. There the court concluded that Zicarelli could be adequately safeguarded from foreign prosecution by limitations on the questions to be propounded to him. No substantial risk of foreign prosecution was posed. We are of a like view in these cases but for a different reason. We adhere to the reason given in denying appellant Tierney's motion for bail.

Our view then and now is that because of the secrecy of the grand jury proceedings no substantial risk of foreign prosecution is posed. Rule 6(e), F.R.Crim.P., provides for this secrecy.[5] The same court which grants immunity is the court which prevents violation of the secrecy. The government represented that it could not violate the secrecy, even under the first sentence of allowing it to disclose matters in the performance of its duties, without a court order. This is answer enough to the contention of appellants that the government might disclose their testimony.

The Tenth Circuit rejected a similar claim on the following reasoning, which we find to be apt, although the appeal was later ordered dismissed as being moot. In re Parker, 10 Cir., 1969, 411 F.2d 1067, vacated and remanded for dismissal as being moot, Parker v. United States, 1970, 397 U.S. 96, 90 S.Ct. 819, 25 L.Ed.2d 81.

"Rule 6(e), Fed.R.Crim.P., with an exception not applicable herein, prevents disclosure of matters occurring before the grand jury unless otherwise ordered by a federal court and since for a court to so order under the circumstances presented in the subject case would defeat one of the purposes

---

4. Government counsel could facilitate the proceedings by making a set of questions available at one time to the witness so that they might be discussed as a group with counsel.

5. Rule 6(e), F.R.Crim.P.:
Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request. of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. . . .

for grand jury secrecy, i. e. the encouragement of free disclosure by those who have information of crimes, United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L. Ed.2d 1077, as well as the court's 'promise' of immunity, it cannot be assumed that a court would grant such an order or accordingly that there is a danger of incrimination. By virtue of the application of Rule 6(e) any evidence, inculpatory or otherwise, related by appellant during the grand jury proceeding, would be unavailable to the Canadian government in either an extradition proceeding in the United States or in a criminal proceeding in Canada." 411 F.2d at 1069–1070.

Appellants point to specific circumstances where it might be necessary to disclose the testimony of appellants, one where it became necessary in the defense of another, and the other in showing derivative use of testimony given under immunity. The answer is that the court granting immunity could protect appellants by refusing to make their testimony available to defendants in other cases, where it is shown to be necessary to the defense, although the refusal might lead to an acquittal. The court could control any problem as to derivative use of the testimony by an in camera proceeding.

Appellants also argue that secrecy would be breached in the event their testimony was used to impeach them or in perjury proceedings against them. Again the initial protection would come from an in camera proceeding. Thereafter, if impeachment or a perjury prosecution should seem indicated to the district court, the question would arise as to whether the scope of the Fifth Amendment embraces protection against perjury or impeachment. We will not now rule on such a speculative hypothesis but cf. Kastigar v. United States, 1972, 406 U.S. 441, 92 S.Ct. 1653, 32 L. Ed.2d 212, on the limit of the Fifth Amendment privilege. See also Harris v. New York, 1971, 401 U.S. 222, 225, 91

S.Ct. 643, 28 L.Ed.2d 1; United States v. Knox, 1969, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275. It is sufficient to say that this hypothesis does not make out a substantial risk of foreign prosecution.

We do not consider the government's argument that appellants would be protected by a refusal to grant extradition. No treaty protection based on the extension immunity has been called to our attention. Thus, a refusal to extradite, assuming Fifth Amendment protection from foreign prosecution, would be of little solace to one who might wish to travel to Great Britain.

Relying on Gelbard v. United States, 1972, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179, appellants contend that they were entitled to refuse to answer the questions propounded to them before the grand jury because of the intervention of a claim of illegal electronic surveillance of them and their counsel. Their position is not so much that there has been electronic surveillance but that the government's denial of electronic surveillance is inadequate. The district judge assumed standing to raise the illegal electronic surveillance claim. We hold that they do have such standing.

Nevertheless, here again, the claim falls under the weight of the facts as disclosed by the record. The testimony for the government was that the Department of Justice had checked with every government agency that had any connection with the investigation and this included the Department of Treasury, which includes Secret Service, Customs, Internal Revenue Service, Alcohol, Tobacco and Firearms Division; the Bureau of Narcotics and Dangerous Drugs, and the Federal Bureau of Investigation, and found that there had been no electronic surveillance of appellants nor of their counsel. This testimony was given under oath, and counsel was subjected to cross examination.

It is the position of appellants that this denial was inadequate because it was hearsay, their argument being that the person who actually made the

check should have testified or should have filed an affidavit. The denial was adequate. See United States v. Reynolds, 9 Cir., 1971, 449 F.2d 1347, 1351; In re Russo, 9 Cir., 1971, 448 F.2d 369, 374.

Appellants also state that the testimony did not make it clear that there had been no electronic surveillance of the telephones listed to appellants and their counsel. We reject this contention. The testimony is to the contrary.

It is also urged that the denial was inadequate because there was no report from the Central Intelligence Agency, nor from the Departments of State and Defense. This was unnecessary in view of the testimony that reports had been obtained from every agency having anything to do with the investigation in process.

■ It now appears that there was an overhear of one of counsel for appellants on June 17, 1972 and that this did not come to the attention of government counsel until July 18, 1972 after the matters on appeal were concluded in the district court. This overhear was called to our attention in the brief of the government. The overhear was on a telephone which was not the subject of inquiry in the district court. It was incidental to a surveillance authorized by court order under 18 U.S.C.A. § 2518. Counsel made a call to the telephone under surveillance. The court issuing the order has by further order made its surveillance order, the pertinent log of calls over the telephone in question, and the transcript of the particular conversation of counsel available to us for in camera examination. We have made an in camera examination of the transcript of this overhear. It contains nothing of evidentiary substance nor does it in anywise have to do with the right to counsel or the adequacy of representation by counsel. This

incident does not afford a basis for the refusal of appellants to testify before the grand jury.

## V.

■ The next assignment of error has to do with the alleged failure of the Department of Justice to follow its own guidelines in applying to the district court for orders to compel appellants to testify. This failure is said to have rendered invalid the orders of the district court to testify and thus the judgments of contempt for disobedience of those orders.

We are unable to discern any merit in the supposed departure from the guidelines. The Acting Assistant Attorney General in charge of the Internal Security Division of the Department of Justice authorized the seeking of the grants of use immunity by the United States Attorney and recited that the testimony sought was necessary and in the public interest. This was in compliance with the statutory requirements. § 6003, supra.

The guidelines on which appellants rely are directed to the handling of requests by United States Attorneys within the Department of Justice for permission to seek orders granting immunity. They are not directed to the procedural or substantive rights of prospective witnesses.

## VI.

■ We come now to the claimed procedural due process defalcations in the district court. The first of these has its genesis in the contention that appellants were not given adequate notice and a meaningful opportunity to prepare for the hearings on the applications for compulsory testimony orders and for the contempt proceedings. They allege that Rule 6(d) of the F.R.Civ.P.[6] was violated

6. F.R.Civ.P., Rule 6(d):
 For Motions—Affidavits. A written motion, other than one which may be heard ex parte, and notice of the

hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of

in that they were not given five days notice before the time specified for the hearings. That rule, assuming its applicability to proceedings such as these, contains an exception for allowing a different time to be fixed by the court. This exception would hardly be more appropriate than in proceedings having to do with the progress of matters before a grand jury. A case in point is United States v. Weinberg, 9 Cir., 1971, 439 F. 2d 743. This assumes a sufficient amount of time or notice for counsel to be able to represent their clients adequately, and the record is clear that the times in question here were more than ample. There is no suggestion of prejudice from the shortened times utilized by the district court.

■ Lastly, appellants charge the district court with partiality to the government and hostility to counsel for appellants in its handling of these proceedings. We have studied the entire record. Our conclusion is that the district court was engaged in handling a difficult and technical matter where experienced counsel were representing appellants with the end in mind of taking full advantage, as was their right, of every available legal means to prevent appellants from having to give testimony to the grand jury. The district court made it clear in the beginning that he would exercise firm control of the situation. This was the duty of the district court. The district court is more than an umpire; the court has full responsibility for the orderly administration of proceedings before it. The record is entirely bereft of a showing of partiality to the government, or of hostility to counsel. Appellants and their counsel throughout the continuous period of the were accorded courteous treatment handling of this matter—from June 18 until July 3, 1972. Every available pro-

cedural right for the protection of appellants was employed. No line of testimony has been given. The conduct of the district court throughout was firm, patient, meticulous and impartial. The complaint against the district court is without merit.

Affirmed.

the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise

provided in Rule 59(c), opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time.