## In re GRAND JURY PROCEEDINGS.

### In the Matter of John Michael LOWRY, Witness-Appellant.

### No. 83–3404
### Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 19, 1983.

James K. Jenkins, Savannah, Ga., for witness-appellant.

Thomas E. Morris, Asst. U.S. Atty., Jacksonville, Fla., for the U.S.

Before GODBOLD, Chief Judge, JOHNSON and ANDERSON, Circuit Judges.

PER CURIAM:

This is an appeal of a recalcitrant grand jury witness from a judgment of civil contempt under 28 U.S.C.A. § 1826. On March

18, 1983, the appellant, John Michael Lowry, was served a subpoena *duces tecum* to appear in the Middle District of Florida before a federal grand jury that is investigating drug trafficking. Lowry's sister's ex-husband, David Cassorla, is apparently a target of the grand jury. On April 12, Lowry presented the grand jury with certain records that had been subpoenaed but refused to answer further questions on the grounds that his responses might incriminate him. The government filed with the District Court for the Middle District of Florida a motion to immunize Lowry from adverse use of his testimony in any criminal proceeding and to compel him to testify. *See* 18 U.S.C.A. §§ 6002, 6003. The court granted the motion on June 10, 1983, and ordered Lowry to testify.

■ On June 15, 1983, the grand jury again called Lowry to testify. He answered a few preliminary questions relating to his personal history. But when asked whether his sister was still married to Cassorla, Lowry sought permission to consult with his attorney who was outside the grand jury room. Lowry returned after a brief recess and answered the question. Next, the Assistant United States Attorney, Thomas E. Morris, asked how long Lowry had known Cassorla. Again Lowry would answer only after speaking with his attorney. Lowry was apparently writing the questions down, leaving the grand jury room, and going to the hall where his attorney, James Jenkins, was drafting answers. When asked whether he had been involved with Cassorla in importing, possessing, or distributing marijuana, and after consulting with his attorney in the manner described, Lowry refused to answer on Fifth and First Amendment grounds. He also indicated that he feared for his safety and that of his family if he testified.[1] When asked about the basis for this fear Lowry requested a recess to consult with his lawyer. The grand jury forewoman complained about the constant interruptions these consultations were creating, and the Assistant United States Attorney stated that Lowry

would be allowed only one more conference with his attorney. After answering that his fear resulted from "what happened to Steve Carson," Lowry would answer no more questions without talking to his attorney, Jenkins. Further grand jury proceedings were delayed and a hearing with Morris and Jenkins in attendance was held by the district court; the court ordered the questioning to continue the next day. The court, after reminding appellant that he had received immunity, permitted Lowry and Jenkins to confer overnight but refused to allow Lowry to continue consulting with Jenkins after every question.

Next day, Lowry refused to answer several questions on the ground that the court's order denied him his Sixth Amendment right to counsel and his Fifth Amendment right to due process. After a recess during which Lowry was able to speak with Jenkins, Lowry persisted in his refusal to answer those same questions, repeating a prepared statement several times.

After a hearing, the court held Lowry in civil contempt. It sentenced him to a term of imprisonment lasting the life of the grand jury, until December 13, 1983, or until Lowry agrees to testify. Lowry appeals, claiming that this judgment violates his Sixth Amendment right to counsel. He claims that, even though he has received immunity from prosecution based on his grand jury testimony, he has other interests, protection of which requires assistance of an attorney.

■ This Court need not reach the merits of the appellant's constitutional claim. Grand jury witnesses have no right to the presence of counsel in the jury room during questioning. *United States v. Mandujano*, 425 U.S. 564, 581, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976); *In re Groban*, 352 U.S. 330, 333, 77 S.Ct. 510, 513, 1 L.Ed.2d 376 (1957); *In re Grumbles*, 453 F.2d 119, 122 (3d Cir.1971), *cert. denied*, 406 U.S. 932, 92 S.Ct. 1806, 32 L.Ed.2d 134 (1972). Nor does a witness have a constitutional right to disrupt the grand jury's proceedings by

---

1. Fear of retribution cannot excuse refusal to testify before a grand jury. *In re Grand Jury Proceedings*, 532 F.2d 404, 408 (5th Cir.), *cert.* *denied*, 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976).

leaving the room to consult with his attorney after every question. *In re Tierney,* 465 F.2d 806, 810 (5th Cir.1972). The district court's order holding Lowry in civil contempt violated no residual right to consult with an attorney after being asked and before answering specific questions; Lowry refused to answer a number of questions *even after* he had the opportunity to write them down or remember them and consult with his counsel.

■ On the first day of questioning, Lowry refused to answer a question concerning his involvement with Cassorla in marijuana distribution schemes both before and after consulting with Jenkins. The next day, Lowry refused on Sixth Amendment grounds to answer several questions relating to his fear of testifying, his travels to South America, and his involvement in any marijuana trafficking schemes. He persisted in his refusal to answer these questions even after a recess during which he and Jenkins were able to confer.[2] Lowry has refused to this day to answer those questions although he has had since June 16, 1983, to consult with his attorney. Even had Lowry not been able to consult with counsel *after* he heard the questions, it is unlikely that any right he had to counsel would have been violated here. Lowry and Jenkins were fully aware of the subject of the grand jury's probe and could easily have predicted and prepared for its inquiries in advance.[3]

To the extent that the appellant has any right to consult with his attorney before answering the grand jury's questions, he has had ample opportunity to exercise that right.[4] *See In re Tierney,* 465 F.2d 806, 810–11 (5th Cir.1972). Lowry's claim that the district court's judgment of contempt violates his Sixth Amendment right to assistance of counsel is therefore without merit.

AFFIRMED.

---

**2.** This refusal belies Lowry's claim that he is willing to answer if he is only permitted to consult with counsel after every few questions.

**3.** During appellant's initial appearance before the grand jury in April 1983, he was informed that the grand jury wanted to question him about the operation of a company, Sunshine Seafood, and events which occurred in Louisiana, where appellant had been convicted on charges relating to marijuana.

**4.** Although we need not decide the issue, it appears to us that Lowry had quite a bit more opportunity to consult with his attorney than the Constitution requires. It is normal practice to permit nonimmunized witnesses to consult with counsel outside the grand jury room, but there is no precedent suggesting that this is a constitutional right of immunized witnesses. In *United States v. Mandujano,* 425 U.S. 564, 581, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976), a four-justice plurality of the Court suggested that grand jury witnesses have no right to counsel whatever. Two justices concurred in the result but took issue with this statement, claiming that grand jury witnesses are entitled to some degree of assistance. *Id.* at 602–09, 96 S.Ct. at 1789–92. But the concurrence based this right on the need to protect the witness's Fifth Amendment privilege against self-incrimination. Where, as here, a grand jury witness is made immune from prosecution based on his testimony, the rationale for right to counsel is undercut, and it appears that right becomes minimal at best.