**UNITED STATES of America**

v.

**Ana Elizabeth SOTO.**

**Civ. Misc. No. H–83–113.**

United States District Court, D. Connecticut.

Nov. 16, 1983.

---

Alan H. Nevas, U.S. Atty., Carmen Espinosa Van Kirk, Asst. U.S. Atty., Hartford, Conn., for plaintiff.

Michael Graham, Graham, Murphy & Rubin, Hartford, Conn., for defendant.

## RULING ON APPLICATION OF THE UNITED STATES FOR AN ORDER DIRECTING WITNESS NOT TO DEPART GRAND JURY ROOM

CLARIE, Senior District Judge.

The petitioner United States of America ("Government") has requested the Court to

issue an order directing the respondent witness, Ana Elizabeth Soto ("witness"), who has been granted use immunity, not to depart from the Grand Jury room to consult with her attorney before answering each question posed to her. The Government prosecutor claims this practice is "an abuse to the consultation privilege, and an attempt to obstruct the Grand Jury's investigation." Counsel for the witness argues that Fifth and Sixth Amendment considerations require that the witness be permitted to consult with her attorney after each question. As an alternative procedure, counsel for the witness suggests that the Grand Jury pose several successive questions to the witness at one time, so that the consultation with counsel could be speeded up. It has been a common practice to allow non-immunized Grand Jury witnesses who could be targets of the investigation to consult with counsel after each question during the Grand Jury proceedings. By contrast, the Court finds that no such constitutional right exists where the witness has been immunized and is not a target of the investigation. However, in exercising supervisory power over Grand Jury proceedings, the Court must strike a balance between the investigatory functions of the Grand Jury and the witness' need to consult with counsel. Therefore, the Court finds that the witness shall be allowed to confer with her attorney after each twenty (20) minutes of questioning for a period of no longer than ten (10) minutes, and that the witness shall not be allowed to write down each question and/or answer during the interrogation.

*Facts*

On September 12, 1983, a $7,000,000 "inside" robbery took place at the Wells Fargo Armored Service Corporation Depot in West Hartford, Connecticut. An arrest warrant in the case was issued for a Wells Fargo employee, Victor Gerena, on September 13, 1983. To date, the whereabouts of Gerena remains a mystery. A federal Grand Jury was convened to investigate

possible violations of federal criminal statutes, including, but not limited to, 18 U.S.C. §§ 659 (theft from an interstate shipment) and 2113(a) and (d) (theft of money belonging to a member bank of the Federal Reserve System) and to unearth any possible clues to Gerena's whereabouts. To achieve this end, the Grand Jury subpoenaed Miss Ana Elizabeth Soto, Gerena's fiancee. Miss Soto admittedly had lived with Gerena for three years and had taken out a marriage license preparatory to a planned marriage on September 16, 1983, four days after the robbery. She was clearly an intelligent witness who could understand the English language and who had completed 11 years of education in the United States.

Motions by Miss Soto's attorney to quash the subpoena and for a hearing regarding a claimed breach of Grand Jury secrecy were denied by this Court as frivolous and unwarranted. The Court's ruling on these motions is currently on appeal before the Second Circuit. Miss Soto actually appeared before the Grand Jury on October 31, 1983.

At that time, Miss Soto articulated concerns regarding self-incrimination by reading a prepared statement. Her counsel argued that she had been arrested on September 14, 1983 by state officials on a charge of "hindering prosecution" and making "false statements to police." These charges were voluntarily dismissed by the Prosecutor in the state court on October 19, 1983. Counsel for the witness claimed that the state charges were groundless, while the Government counsel represented that the state charges were dismissed so that she could be summoned before the federal Grand Jury to testify, without the defense that there were state criminal charges pending. Counsel for the witness has expressed concern that a similar arrest will follow at the federal level if the answers that Miss Soto gives to the Grand Jury unintentionally vary from the answers she gave to state and federal investigators immediately after the robbery; i.e., *Id.*, at ¶ 20–21.[1]

1. Miss Soto's counsel has called, both in the    newspapers and on the record, the state arrest

To eliminate any such concern and in furtherance of the investigatory purposes of the Grand Jury, the Government applied for an Order Conferring Immunity on Miss Soto. On November 1, 1983, after a full hearing in the presence of counsel, the Court granted Miss Soto "use" immunity under 18 U.S.C. §§ 6002, 6003. The Court denied Miss Soto's claims of spousal privilege and ordered her to testify concerning all matters related to this robbery under pain of contempt. The Court further explained to her that she must tell the truth under oath and if she did not and wilfully lied to the Grand Jury in a material matter, she could be prosecuted. It was further explained that the penalty for perjury may be imprisonment for not more than five years.

When she re-appeared before the Grand Jury, Miss Soto again refused to testify. She restated her fears of self-incrimination and unintentional perjury. Despite governmental assurances that Miss Soto was not the target of the Grand Jury's investigation, she explained that she did not trust either the Grand Jury or the prosecutors. The Government thereupon applied for an Order of Contempt under 28 U.S.C. § 1826. On November 3, 1983, after an open court hearing and while accompanied by counsel, Miss Soto agreed to testify rather than be held in contempt.

Upon appearing once again before the Grand Jury, she requested certain conditions for her interrogation. She insisted that the questioners speak slowly, so that she could write down the questions, depart from the Grand Jury and consult with her attorney before answering. Although her attorney suggested that the Government pose several questions at one time to hasten the process, the Grand Jury and the United States Attorneys gave her one question at a time. After receiving each question, she would then leave the Grand Jury room, confer with her attorney and return with a prepared written answer, which she would read to the Grand Jurors. This process consumed nearly two and one-half (2½) hours in disposing of nineteen (19) questions.

The Grand Jurors became frustrated with the progress of the Grand Jury proceeding, claiming that the consultation process was merely an "attempt to obstruct the Grand Jury's investigation." The Government then moved for this Order, restraining the witness from leaving the Grand Jury room after each question to consult with her attorney. The Government represents that no constitutional right to counsel attaches to an "immunized, non-target witness" at the Grand Jury level; and that the situation here is an "abuse of the consultation privilege" traditionally granted to nonimmunized Grand Jury witnesses.

Miss Soto's counsel claims an absolute right to counsel arising from the "custodial" type of "interrogation" attendant upon the questioning of such an immunized witness. He claims that the "use" immunity granted to her does not insulate her from perjury and that the consultation process will aid her to "avoid saying false things or not testifying fully and unintentionally." He claims further that the "interaction of the attorney and the witness" will jog Miss Soto's memory, alleviate her nervousness, prevent her from "blurt[ing] out that fast answer," and thus assist "the grand jury in receiving full and total answers."

### Discussion of Law

■ A constitutional right to counsel for Grand Jury witnesses could normally arise from either the Sixth Amendment, *United States v. Mandujano*, 425 U.S. 564, 581, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976) (Burger, C.J., plurality opinion) ("*Mandujano* plurality"), or the Fifth Amendment's Privilege against self-incrimination. *Id.*, at 602–03, 606–09, 96 S.Ct. at 1789–90, 1791–92 (Brennan, J., concurring opinion) ("*Mandujano* concur"). It would appear that no

and the federal subpoena a "hostage game." The Hartford Courant, October 19, 1983, at B2,

and Hearing, October 31, 1983.

Sixth Amendment constitutional right to counsel attaches for the benefit of such a witness at the Grand Jury level. "No criminal proceedings had been instituted against respondent, hence the Sixth Amendment right to counsel had not come into play." *Mandujano* plurality, at 581. In accord is *United States v. Vasquez*, 675 F.2d 16 (2d Cir.1982).

"While the government's investigation of Vasquez may have commenced when he was called before the grand jury for the first time, the fact that a person is the subject of an investigation is not enough to trigger his Sixth Amendment right to counsel. See *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); [other cites omitted]. For a Sixth Amendment right to counsel to attach, adversarial proceedings must have commenced against an individual, 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). Vasquez's argument is that adversarial proceedings against him commenced when he was called as a witness before a grand jury in September of 1978. That he was subpoenaed to testify as a grand jury witness, however, did not subject him to adversarial proceedings." *Id.* at 17.

See also *In Re Special September, 1978 Grand Jury*, 640 F.2d 49, 64 (7th Cir.1980), ("the Sixth Amendment right to effective assistance of counsel does not apply to a grand jury investigation."), and *United States v. Cohen*, 444 F.Supp. 1314, 1319 (D.Pa.1978). Therefore, the witness Soto enjoys no Sixth Amendment right to counsel.

■ Neither does she enjoy a Fifth Amendment right arising from *Miranda* -type facts. The plurality opinion of *Mandujano* states that a Grand Jury proceeding is not a "custodial interrogation," which would trigger the full panoply of *Miranda* warnings, even when the witness is a 'virtual' or 'putative' defendant." *Mandujano* plurality, at 578–80. Thus, a federal Grand Jury does not provide the context in which Miss Soto may avail herself of a *Miranda* -type right to counsel.

However, a Grand Jury witness who has not been granted immunity may possess a constitutional right to counsel proceeding from the Fifth Amendment's privilege against self-incrimination, *Mandujano* concur, 425 U.S. at 602–09, 96 S.Ct. at 1789–92, *In Re Special Grand Jury No. 81–1*, 676 F.2d 1005, 1010 (4th Cir.1982), if indeed the Grand Jury witness' "privilege against compulsory self-incrimination is ... involved." *Mandujano* concur, 425 U.S. at 602, 96 S.Ct. at 1789. Customarily, federal courts allow a *non-immunized* Grand Jury witness the opportunity to leave the Grand Jury room at any time, and consult with his or her attorney between questions. *See*, i.e., cases cited *Id.*, at 606 *et. seq.*, n. 23, 96 S.Ct. at 1791 n. 23, and *In Re Special Grand Jury No. 81–1*, *supra.*[2] This practice generally is recognized so as to respond to the non-immunized witness' need to protect his or her privilege against self-incrimination.

**2.** The three cases that the witness cites for the proposition that even after immunity, Grand Jury witnesses have a right to consult with their attorney, *United States v. George*, 444 F.2d 310, 315 (6th Cir.1971), *United States v. Duncan*, 456 F.2d 1401, 1407 (9th Cir.1972), and *United States v. Weinberg*, 439 F.2d 743, 745 (9th Cir.1971) are all from other circuits and dealt with the issue as either *dicta* or *obiter dicta*. Most importantly, all were decided before the release of *Kastigar v. United States*, 406 U.S. 441, 452, 92 S.Ct. 1653, 1660, 32 L.Ed.2d 212 (1972), the case that conclusively established that use immunity was co-extensive with the Fifth Amendment privilege against self-incrimination, and *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the case that held that no Sixth Amendment right to counsel existed until formal adversarial proceedings had begun against an individual. Before these two cases, it was arguable that use immunity did not entirely "substitute" for the privilege against self-incrimination and that Grand Jury witnesses enjoyed a Sixth Amendment right to counsel if they had become "accuseds" under *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. Thus, at the time the three "immunity" cases referred to above were decided, it was possible that Grand Jury witnesses, even though immunized, had the right to consult with counsel.

The need for such practice is greatly diminished when, as here, the witness Soto has been immunized and affirmatively assured that she herself is not a target of the Grand Jury investigation. The use immunity granted to Miss Soto under 18 U.S.C. §§ 6002, 6003 is co-extensive with her Fifth Amendment privilege against self-incrimination. *Mandujano* plurality, 425 U.S. at 575–76, 96 S.Ct. at 1775–76, *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972), *United States v. Alter*, 482 F.2d 1016, 1028 (9th Cir.1973), *Matter of Grand Jury (In Re Vigil)*, 524 F.2d 209, 219 (10th Cir.1975), *cert. denied* 425 U.S. 927, 96 S.Ct. 1526, 47 L.Ed.2d 170. The federal immunity that Miss Soto has been granted also shields her from state prosecution. *Murphy v. Waterfront Commission*, 378 U.S. 52, 53, n. 1, 77–79, 84 S.Ct. 1594, 1596, n. 1, 1608–1609, 12 L.Ed.2d 678, *Reina v. United States*, 364 U.S. 507, 510, 81 S.Ct. 260, 262, 5 L.Ed.2d 249, *In Re Bianchi*, 542 F.2d 98, 101 (1st Cir.1976), *Carter v. United States*, 417 F.2d 384, 387 (9th Cir.1969), *cert. denied* 399 U.S. 935, 90 S.Ct. 2253, 26 L.Ed.2d 807, *rehearing denied* 400 U.S. 855, 91 S.Ct. 27, 27 L.Ed.2d 93, *United States v. Rice*, 421 F.Supp. 871, 878 (E.D.Ill.1976), *rehearing denied* 400 U.S. 855, 91 S.Ct. 27, 27 L.Ed.2d 93. While perjured testimony cannot be immunized or constitutionally privileged, 18 U.S.C. § 6002, *Mandujano* plurality, 425 U.S. at 576–78, 581–82, 96 S.Ct. at 1776–77, 1778–79, *Bryson v. United States*, 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969), the witness' fears of false statement charges arising from a slight variance between her Grand Jury testimony and her prior statements to investigators immediately after the robbery are unfounded under present law, as long as she now tells the truth before this Grand Jury. The Ninth Circuit has held that statements given by an immunized Grand Jury witness to an F.B.I. investigator one year before the Grand Jury could not give rise to false statement charges, even if they were inconsistent with the witness' Grand Jury testi-

mony. *Alter, supra.* In so holding, they noted:

"Immunity 'prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness' [*Kastigar, supra* [406 U.S.] at 453 [92 S.Ct. at 1661]]. Accordingly, in the event of a prosecution for making a false statement to the F.B.I., none of the Government's proof could be based upon direct or indirect evidence gained by virtue of Alter's immunized grand jury testimony. The likelihood for abuse is minimized by 'the heavy burden' *Kastigar* places on the Government to prove that 'all of the evidence it proposes to use was derived from legitimate independent sources.' *Id.* at 461–62 [92 S.Ct. at 1665–66]." *Alter, supra*, at 1028.

This case was cited with approval in *United States v. Housand*, 550 F.2d 818, 823 (2d Cir.1977), *cert. denied* 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 *Housand* itself stands for the proposition that, if testimony given under oath has been immunized, and is truthful, it cannot be used thereafter in connection with perjury charges. *Id.*, at 822–23. *See also Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), in which statements sworn and given in a private attorney's office were not part of "ancillary proceedings," under 18 U.S.C. § 1623(c). In *Dunn*, The United States Supreme Court held that a sworn statement must have been executed with a degree of formality similar to that of a pretrial deposition (including, *inter alia*, formal notice, court authorization, and the right to presence of counsel) to be an "ancillary proceeding" for the purposes of § 1623(c). *Id.* at 111–13, 99 S.Ct. at 2196–97. As such, these prior statements could not be used as statements "inconsistent" with either court or Grand Jury testimony to give rise to perjury charges under this statute. The statements given by the witness Soto in this case to investigators immediately after the robbery, do not approach the requisite level of formality, and

thus, could not be used in a § 1623(c) perjury prosecution.

■ Recognizing that immunity from prosecution substitutes for the Fifth Amendment privilege against self-incrimination, several federal courts have recently announced or affirmed limitations on the consultation rights of immunized Grand Jury witnesses. *In Re Tierney*, 465 F.2d 806, 810–11 (5th Cir.1972), without reaching the question of whether an immunized Grand Jury witness has a right to consult with counsel during questioning (and, if so, the extent thereof), held that allowing the immunized witnesses to consult with an attorney after two or three questions adequately safeguarded whatever right of consultation that these witnesses had. In so holding, *Tierney* underscored two factors: (1) the District Court's ability to "prevent a breakdown in the grand jury proceedings by frequent departures from the grand jury room for frivolous reasons and with intent to frustrate the proceedings;" and (2) the fact that practical accommodations of the needs of witnesses and those of the Grand Jury could be negotiated in several ways, including the procedures used in the case, or a system in which the Government made available a set of questions at one time so that the witnesses and their counsel could discuss said questions all together. *Id.*, at 810–11, n. 4.

In the *Matter of Lowry*, 713 F.2d 616, 617–18 (11th Cir.1983), the court, while declining to reach the merits of the constitutional right of an immunized Grand Jury witness to counsel in general, held that the witness did not have the right to consult with his attorney after each question. *Lowry* found, however, that while "it is normal practice to permit non-immunized witnesses to consult with counsel outside the grand jury room, ... there is no precedent suggesting that this is a constitutional right of immunized witnesses." *Id.*, at 618, n. 4. That decision clearly stated that a witness does not "have a constitutional right to disrupt the grand jury's proceedings by leaving the room to consult with his attorney after each question." *Id.*, at 617–18. Finding that both the immunized witness and his attorney knew of the subject of the Grand Jury probe, that case stated that they "could easily have predicted and prepared for its [the Grand Jury's] inquiries in advance." *Id.*, at 618. Thus, *Lowry* refused to uphold the immunized witness' claim that the District Court's contempt order violated the witness' Sixth Amendment right to the assistance of counsel.

*In Re Earnest*, 90 F.R.D. 698, 700 (D.Ga. 1981) held that an immunized Grand Jury witness was not entitled to speak to his attorney during the questioning. The Court there found that the purpose of the practice of allowing non-immunized witnesses to consult with their attorneys during Grand Jury questioning was to "determine whether or not [the witnesses] should invoke their Fifth Amendment privilege against self-incrimination." *Id.* However, where the witness has been immunized and thus legally freed from criminal prosecution for whatever truthful testimony she might give, and has been advised by counsel in deciding whether or not to invoke the privilege prior to the grant of immunity, the "need to consult with counsel on every question no longer exist[s]." *Id.* In so holding the Court rejected arguments strikingly similar to those of the witness Soto, to wit, that consultation refreshes the witness' recollection, helps avoid perjury, insures a full, complete answer, and thus, helps the Grand Jury's investigation. *Id.*, at 699. The Court observed that the immunized witness, by seeking his attorney's advice after every question, was, in effect, taking his lawyer into the Grand Jury room with him, *Id.*, at 700, and that the Grand Jury was entitled to the witness' testimony and not that of this attorney. *Id.*, at 699.

The Court finds that the general rule allowing non-immunized witnesses to consult freely with their attorneys during Grand Jury questioning does not apply to the situation of an immunized witness such as Miss Soto. The use immunity granted to her is co-extensive with her Fifth Amendment privilege against self-incrimination. It shields her from all prosecutions

derived from the use or derivative use of her testimony, save wilful false statement charges. All that she is requested to do, to avoid false statement charges, is tell the truth before the Grand Jury. For these reasons and under the holdings of *Tierney, Lowry,* and *Earnest, supra,* the Court finds that the consultation privilege—claimed after each question or sequence of questions—is not a valid one. Furthermore, the Court finds that, as in the case of non-immunized witnesses who are allowed to speak with counsel outside the Grand Jury room at all times, so as to protect their Fifth Amendment privilege against self-incrimination, a "reasonable and workable accommodation of the traditional investigatory role of the grand jury" and the needs of the immunized witness could be effected. *United States v. Capaldo,* 402 F.2d 821, 824 (2d Cir.1968), *cert. denied* 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764. *In accord* is *Tierney, supra.*

█ On one hand, the Court is mindful of the fact that the witness is young, inexperienced in legal matters and investigations, and will, more likely than not, be testifying about matters sensitive to her. The Court is cognizant of the fact that the witness has been thrust into the public eye by the events of September 12, and that her every move is scrutinized carefully by the media and the public at large. The Court realizes that Miss Soto will face "the experienced counsel of the prosecution" during the questioning. *In Re Special Grand Jury No. 81–1, supra.* The Court is aware that the witness may, under these stressful circumstances, become nervous, forget facts, and that, she may need to consult with counsel regularly during the interrogation. "As a matter of fairness, government ought not to compel individuals to make binding decisions concerning their legal rights in the enforced absence of counsel." *People v. Ianniello,* 21 N.Y.2d 418, 288 N.Y.S.2d 462, 235 N.E.2d 439 (Ct. App.1968). Miss Soto must be allowed some legal protection.

On the other hand, the Grand Jury is "an investigation, rather than a prosecution,"

Id., and in this instance an investigation of a very serious matter. The public has a right to Miss Soto's evidence. *United States v. Burr,* 25 F.Cas. 38 (No. 14,962 e) (C.C.Va.1807). Furthermore, under *Lowry* and *Earnest, supra,* the Court finds that Miss Soto and her counsel easily could have anticipated and prepared for the questioning, and refreshed the witness' recollection in the time before the Grand Jury convened. The constant interruptions posed by the consultation practices to date have severely disrupted the investigatory function of the Grand Jury. The Court is concerned that these consultations are being used for strategic, or tactical reasons, rather than for legal advice. *Id.* Under *Tierney* and *Lowry, supra,* and considering the facts being investigated here, the Court has both a right and a duty to prevent disruptions, and to allow the investigation to proceed as smoothly as possible, within the boundaries of the law.

The Court finds that a practical accommodation for all parties concerned shall be as follows: (1) The Grand Jury shall question the witness Soto continuously for twenty (20) minutes and then allow her ten (10) minutes in which to consult privately with her attorney; and (2) Miss Soto shall not delay the proceedings by writing down the questions during the interrogation, nor her answers. The transcribing process impedes the investigation, virtually brings the attorney into the Grand Jury room, and allows for the possibility that the testimony given will be more that of the witness' counsel than that of the witness. This procedure will expedite the Grand Jury investigation while allowing the witness any necessary legal advice.

While it might appear that any truthful witness having been granted immunity need not avail herself of counsel, the Court must be cognizant of possible situations, where questions asked might invade the attorney-client privilege, and thus require legal advice and guidance. Furthermore, where a witness intends in good faith to tell the truth, but not disclose all of the facts in depth, such withholding of material

information by telling half-truths intending to mislead, might subject the witness to a perjury charge. Finally, if a false declaration has in fact been made to the Grand Jury, counsel could be helpful in advising the witness of the necessary steps under 18 U.S.C. § 1623(d) to prevent any prosecution for such declarations by the correction of such testimony.

Title 18 U.S.C. § 1623(d) states:

"Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed."

The availability of counsel under the guidelines ordered by the Court will assure the witness of all necessary constitutional safeguards, while at the same time assuring the Government of the witness' testimony.

SO ORDERED.