OPINION OF THE COURT
Thomas A. Demakos, J.
Defendant moves for an order dismissing the indictment pursuant to People v Isaacson (44 NY2d 511) and for suppression of defendant’s testimony pursuant to CPL 710.20 (subd 3), given at the trial of Pear Ahmed on the grounds that defendant’s due process rights under the *993 Fifth and Sixth Amendments of the United States Constitution have been violated.
Defendant was indicted for the crime of perjury in the first degree.
In determining these motions, the court has considered the motion papers, memoranda of law submitted by the parties, oral argument, and the minutes of the combined Isaacson and Huntley hearing.
On July 9, 10, and 11, 1984, a combined Isaacson and Huntley hearing was conducted. The court makes the following findings of fact and conclusions of law.
Detective Alfred Scionti was assigned to investigate the death of Frank Gaffe on May 20, 1982. That evening Detective Scionti interviewed defendant at the station house and defendant denied any knowledge of the crime. Three days later, at her friend’s apartment and at the behest of defendant’s friends, defendant named Pear Ahmed as the killer of Mr. Gaffe. Defendant, thereafter, testified before the Grand Jury which indicted Pear Ahmed.
Prior to the trial of Pear Ahmed, defendant phoned Gerald Green, the Assistant District Attorney who was assigned to try the case, and asked to meet with Mr. Green. Defendant told the prosecutor that at first she did not see the perpetrator; then, that she did not remember who the perpetrator was; and finally she then told Mr. Green that she did not want to testify at trial.
Defendant was subsequently given a polygraph test by Mr. Ponzi, who was employed by the Kings County District Attorney’s office. Mr. Ponzi advised defendant that she failed the lie detector test and that at the trial, she should testify truthfully.
None of the people who came in contact with the defendant threatened her in any way but only cautioned her to testify truthfully or she would be subject to a prosecution for perjury.
The evidence presented at the hearing clearly shows that defendant’s contention that she was coerced to testify before the Grand Jury is without merit. Her contention that the warnings given her by the Assistant District *994 Attorney and his staff intimidated defendant is also without merit. Defendant has failed to present any evidence at the Isaacson-Huntley hearing in support of her contention that she was intimidated by law enforcement authorities.
Defendant’s motion to dismiss the indictment, pursuant to People v Isaacson (44 NY2d 511, supra), is denied.
Turning now to defendant’s assertions that her Fifth and Sixth Amendment rights were violated when the District Attorney presented her as a witness in the trial of Pear Ahmed and thereafter had her indicted for perjury when her trial testimony was inconsistent with her Grand Jury testimony, section 210.20 of the Penal Law provides as follows:
“Where a person has made two statements under oath which are inconsistent to the degree that one of them is necessarily false, where the circumstances are such that each statement, if false, is perjuriously so * * * the inability of the people to establish specifically which of the two statements is the false one does not preclude a prosecution for perjury, and such prosecution may be conducted as follows:
“1. The indictment or information may set forth the two statements and, without designating either, charge that one of them is false and perjuriously made * * *
“3. The highest degree of perjury of which the defendant may be convicted is determined by hypothetically assuming each statement to be false and perjurious.”
It is therefore clear that when defendant testified differently at the Ahmed trial, she was exposing herself to a prosecution for perjury. “[E]xposure, whether to perjury or other criminal charges, is a sufficient basis for a witness’ invocation of the privilege against self incrimination (see People v Sapia, 41 NY2d 160, 164; People v Arroyo, 46 NY2d 928)” (People v Shapiro, 50 NY2d 747, 759-760; United States v Partin, 552 F2d 621, 632; United States v Ponti, 257 F Supp 925; see, also, Lefkowitz v Turley, 414 US 70).
The question therefore arises whether the Assistant District Attorney, or the court, was obligated to inform *995 defendant of her Fifth Amendment right against self incrimination. The Federal courts find no such duty. In fact, they do not require the giving of any warnings to a witness to testify truthfully, or as to the consequences of lying.
In United States v Mandujano (425 US 564), the court answered in the negative the question whether Miranda warnings must be given to a Grand Jury witness who is called to testify about criminal activities in which that witness may have been involved. Although the potential defendant in Mandujano was informed of his Fifth Amendment right against self incrimination, a plurality of the court saw no need for any further Miranda warnings. The plurality opinion in Mandujano (at p 570) cited with approval and set forth the following quotation from United States v Orta (253 F2d 312, 314), which quoted from United States v Scully (225 F2d 113, 116):
“ ‘ “[T]he mere possibility that the witness may later be indicted furnishes no basis for requiring that he be advised of his rights under the Fifth Amendment, when summoned to give testimony before a Grand Jury.” ’
“ ‘That holding is applicable to the present record. There is no showing that the Grand Jury before which Orta testified was seeking to indict him or any other person already identified’ ”.
It is interesting to note that the Orta case did not address whether Fifth Amendment rights should be given if a defendant had testified on a previous occasion and changed that testimony before the Grand Jury indicted that defendant.
In United States v Wong (431 US 174), decided subsequent to United States v Mandujano (425 US 564, supra), the court rejected the contention that there was an obligation to inform a witness of the right against self incrimination. The court considered the administering of the oath sufficient to warn a witness of the dangers of lying. “[T]he Fifth Amendment privilege does not protect perjury” (United States v Wong, 431 US 174, 179, supra; see, also, United States v Crocker, 568 F2d 1049,1055; United States v Long, 706 F2d 1044, 1051; United States v Scully, 225 F2d 113, 116, supra; cf. United States v Soto, 574 F Supp 986, 990). Even when the government has knowledge that *996 a witness may be incriminated by testifying (i.e., in the Grand Jury), there is no obligation to inform that witness of the Fifth Amendment right against self incrimination (see Robinson v United States, 401 F2d 248, 250; cf. United States v Potash, 332 F Supp 730, 732). In Robinson, the court stated that defendant did not claim the Fifth Amendment privilege and the “[g]overnment was under no duty to suggest to him that he claim the privilege” {supra, at p 250).*
Notwithstanding the Federal courts determination that Fifth Amendment warnings against self incrimination need not be given, and that a witness need not be warned of the consequences of lying under oath, such warnings have in fact been given by lower courts and prosecutors. (See, e.g., United States v Washington, 431 US 181 [prosecutor warned defendant of his Fifth Amendment right to remain silent]; United States v Mandujano, 425 US 564, 567, 580, supra [prosecutor gave Fifth Amendment warning]; Webb v Texas, 409 US 95 [Trial Judge advised potential witness of Fifth Amendment right not to incriminate himself and that lying under oath may result in a perjury prosecution]; ■United States v Winter, 348 F2d 204, 205 [prosecutor advised Winter of his Fifth Amendment right against self incrimination prior to Winter’s testifying before the Grand Jury]; United States v Soto, 574 F Supp 986, 989, supra [after a grant of United States immunity as to testimony before the Grand Jury the court told the witness that she must tell the truth under oath or be subject to being prosecuted under perjury].)
In New York, witnesses have also been warned of their Fifth Amendment privilege against self incrimination. (See, e.g., People v Lee, 58 NY2d 773, 775 [court warned witness]; People v Shapiro, 50 NY2d 747, 757, supra [the prosecutor issued warnings to potential witnesses at trial that they were subjecting themselves to prosecution for perjury].)
The New York Court of Appeals seems to require that potential witnesses be warned “of their possible liability for *997 false statements under oath” (People v Shapiro, 50 NY2d 747, 761-762, supra; emphasis added; People v Lee, 58 NY2d 773, 775, supra).
In Lee (supra), defendant was charged with an undercover sale of cocaine in his apartment. Defendant contended that his roommate sold the drugs and defendant wanted to present the roommate at trial as an exculpatory witness. The Trial Judge, after receiving approval of defendant’s attorney, told the witness that the witness had a Fifth Amendment right against self incrimination and that the witness should have an attorney present to advise him. The Trial Judge also told the potential witness that if the witness testified at defendant’s trial, his testimony “ ‘should be referred very strongly to the District Attorney for appropriate action’” (supra, at p 775). Although the Court of Appeals stated that the words “very strongly” would have been better left unsaid, the court held that the warning to the witness was no more than a statement that if the witness testified, thereby inculpating himself, the District Attorney would be so advised. The Court of Appeals in Lee reaffirmed its holding in People v Shapiro (50 NY2d 747, supra) that there is a duty imposed upon the District Attorney to “advise the witness of possible consequences of which [the witness is] entitled to know before deciding to testify” (58 NY2d, at p 775).
This court interprets the words “possible liability” (People v Shapiro, 50 NY2d 747, 761, supra), and “possible consequences” (People v Lee, 58 NY2d 773, 775, supra) to mean that a witness must be warned only to tell the truth under oath and that if the witness lies, the witness will be subject to being prosecuted for the crime of perjury.
The mandate of People v Shapiro (50 NY2d 747, supra) and People v Lee (58 NY2d 773, 775, supra) was met when the Assistant District Attorney, Gerald Green, Mr. Ponzi, who administered the lie detector test to the defendant, and Detective Alfred Scionti informed defendant prior to her testifying at the Ahmed trial to tell the truth and that lying would result in a prosecution for perjury.
The court must now determine whether the prosecutor was obligated to request that counsel be appointed for defendant prior to her testifying at the Ahmed trial.
*998 A defendant is entitled to counsel at all “critical stages” of a criminal prosecution. Generally, that “critical stage” begins with the filing of an accusatory instrument (People v Rowell, 59 NY2d 727, 730; People v Settles, 46 NY2d 154, 165; GPL 1.20, subd 1). The right to counsel also attaches once the criminal action has commenced (People v Samuels, 49 NY2d 218, 221; see, also, People v Claudio, 59 NY2d 556, 560-561). The right to counsel may also attach where there has been “significant judicial activity” (People v Samuels, 49 NY2d 218, 221, supra; People v Morton, 104 AD2d 569). An example of this is when a court order directs that a defendant appear in a lineup (People v Coleman, 43 NY2d 222; People v Samuels, 49 NY2d 218, 221-222, supra). Where an individual is in custody and has expressed the need for counsel, the defendant has the right to counsel (People v Rowell, 59 NY2d 727, 730, supra; People v Lucas, 53 NY2d 678, 679). The right to counsel has also been expanded to prevent noncustodial questioning about matters on which a defendant is represented by counsel (People v Skinner, 52 NY2d 24). The right to counsel may not be used as a “ ‘shield * * * to immunize one represented by an attorney against investigative techniques that capture a new crime in progress’ ” (People v Mealer, 57 NY2d 214, 218; People v Krom, 61 NY2d 187, 199).
Defendant had not been charged with any crime, nor had any criminal proceeding been commenced against her, nor had there been any “significant judicial activity” (People v Samuels, 49 NY2d 218, 221, supra). Defendant was not represented by counsel nor did she request that counsel be appointed for her. Defendant was not placed upon the witness stand at Ahmed’s trial in order to create a “perjury trap” (People v Tyler, 46 NY2d 251, 258), or as a prospective defendant (Robinson v United States, 410 F2d 248, 250, supra). In any event, whether the defendant is a victim of a “perjury trap” is generally a question of fact to be resolved by the jury (Matter of Nigrone v Murtagh, 36 NY2d 421, 426).
Furthermore, prior to defendant testifying at the Ahmed trial, no inconsistent statement had been made under oath, no charges with respect to any perjury had been filed and the authorities were under no “constitutional obligation” *999 to commence proceedings at that time (see People v Ferrara, 54 NY2d 498, 506).
As defendant did not come within any category where the right to counsel attaches, she was not entitled to have counsel appointed for her prior to her testifying at the Ahmed trial.
Defendant’s motion to suppress the testimony given by her at the trial of Pear Ahmed is denied.
Defendant’s motions in their entirety are denied.

 The Robinson court also stated at page 251 of its decision that the defendant, in his testimony had not incriminated himself by making any confession or admission “as to any crime which he, or anyone, had committed in the past”.